1   Elizabeth J. Cabraser (CSB No. 083151)
    Robert J. Nelson (CSB No. 132797)
2   Lexi J. Hazam (CSB No. 224457)
    Wilson M. Dunlavey (CSB No. 307719)
3   **LIEFF CABRASER HEIMANN**
      **& BERNSTEIN, LLP**
4   275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
5   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
6
    Kelly K. McNabb (*pro hac vice forthcoming*)
7   **LIEFF CABRASER HEIMANN**
      **& BERNSTEIN, LLP**
8   250 Hudson Street, 8th Floor
    New York, NY 10013-1413
9   Telephone: (212) 355-9500
    Facsimile: (212) 355-9592
10
    Alexander Robertson,IV(CSB No. 127042)
11  **ROBERTSON & ASSOCIATES, LLP**
    32121 Lindero Canyon Rd. Suite 200
12  Westlake Village, CA 91361
    Telephone: (818) 851-3850
13  Facsimile: (818) 851-3851

14              UNITED STATES DISTRICT COURT
15              CENTRAL DISTRICT OF CALIFORNIA
                      SOUTHERN DIVISION
16

| 17 DAVEY'S LOCKER SPORTFISHING, INC., a California corporation; BLUE PACIFIC FISHERIES, a California corporation; IVAR SOUTHERN and LINDA SOUTHERN, individuals; NEWPORT LANDING SPORTFISHING, INC., a California corporation; SAN PEDRO BAIT Co., a California corporation; DONALD C. BROCKMAN, individually and as trustee of the DONALD C. BROCKMAN TRUST and HEIDI M. JACQUES, individually and as trustee of the HEIDI M. BROCKMAN TRUST; GREGORY HEXBERG, individually and as trustee of THE GREGORY C. AND DEBORAH L. HEXBERG FAMILY TRUST, individually and on behalf of others similarly situated. | **Case No. 8:21-cv-1684**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Strict Liability under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670,** *et seq.* **Government Code Section 8670,** *et seq.*<br>2. **Strict Liability for Ultrahazardous Activities**<br>3. **Violation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701** *et seq.*<br>4. **Negligence**<br>5. **Public Nuisance** |
| --- | --- |

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

| | |
|---|---|
| 1 | |
| 2 | Plaintiffs, |
| 3 | v. |
| 4 | AMPLIFY ENERGY CORPORATION, a |
| 5 | Delaware corporation, BETA OPERATING COMPANY, LLC, a Delaware corporation, |
| 6 | SAN PEDRO BAY PIPELINE COMPANY, a California corporation, |
| 7 | Defendants. |
| 8 | |

**6. Negligent Interference With Prospective Economic Advantage**
**7. Trespass**
**8. Continuing Private Nuisance**

**<u>DEMAND FOR JURY TRIAL</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     NATURE OF THE ACTION ............................................................... 1

III.    PARTIES ............................................................................................. 4

IV.     JURISDICTION AND VENUE ........................................................... 6

V.      FACTS ................................................................................................. 6

        A.      The Southern California Coast ................................................. 6

        B.      The Rupture .............................................................................. 7

        C.      The Catastrophic Consequences of Defendants' Failure to Detect Their
                Own Spill. ............................................................................... 12

        D.      This Catastrophe Never Should Have Happened. ................. 22

        E.      Defendants have a long history of safety violations. ............ 24

VI.     PLAINTIFFS' FACTS ....................................................................... 24

        A.      Plaintiff Davey's Locker Sportfishing, Inc. ......................... 24

        B.      Plaintiff Blue Pacific Fisheries ............................................. 25

        C.      Plaintiffs Ivar Southern and Linda Southern ....................... 27

        D.      Plaintiff Newport Landing Sportfishing, Inc. ...................... 27

        E.      Plaintiff San Pedro Bait Company ........................................ 28

        F.      Plaintiffs Donald C. Brockman, individually and as trustee of the
                Donald C. Brockman Trust, and Heidi M. Jacques, individually and as
                trustee of the Heidi M. Brockman Trust ................................ 29

        G.      Plaintiff Gregory Hexberg, individually and as trustee of the Gregory
                C. and Deborah L. Hexberg Family Trust ............................. 30

VII.    CLASS ACTION ALLEGATIONS ................................................. 31

VIII.   CAUSES OF ACTION ..................................................................... 35

        First Claim for Relief Strict Liability under Lempert-Keene-Seastrand
        Oil Spill Prevention and Response Act,  Government Code Section
        8670, *et seq.* ................................................................................. 35

        Second Claim for Relief Strict Liability for Ultrahazardous Activities ....... 37

        Third Claim for Relief Violation of the Oil Pollution Act of 1990, 33
        U.S.C. § 2701 *et seq.* ................................................................... 38

1

2

**TABLE OF CONTENTS**
**(continued)**

Page

3   Fourth Claim for Relief Negligence.................................................................39

4   Fifth Claim for Relief Public Nuisance........................................................42

5   Sixth Claim for Relief Negligent Interference With Prospective
    Economic Advantage ........................................................................44

6

7   Seventh Claim for Relief Trespass...............................................................45

8   Eighth Claim for Relief Continuing Private Nuisance.................................47

9   IX.   REQUEST FOR RELIEF...............................................................48

    X.    DEMAND FOR JURY TRIAL.......................................................49

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

# I.     **INTRODUCTION**

Plaintiffs Davey's Locker Sportfishing, Inc.; Blue Pacific Fisheries; Ivar Southern and Linda Southern; Newport Landing Sportfishing, Inc.; San Pedro Bait Company; Donald C. Brockman, individually and as trustee of the Donald C. Brockman Trust, and Heidi M. Jacques, individually and as trustee of the Heidi M. Brockman Trust; and Gregory Hexberg, individually and as trustee of The Gregory C. and Deborah L. Hexberg Family Trust (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company ("Defendants"), based where applicable on personal knowledge, information and belief, and the investigation and research of counsel.

# II.     **NATURE OF THE ACTION**

1.     On the evening of Friday, October 1, 2021, an offshore pipeline, owned and operated by Defendants, ruptured.[1] For Defendants, a major oil spill was only a matter of time: federal agencies have cited Defendants for over 125 safety and maintenance violations since 1980, including an oil spill. Of these violations, 72 were so severe that drilling had to be stopped and the problem fixed before operations could be resumed.[2] The most recent safety warning was issued on September 29, 2021, just days before the spill.[3]

---

[1] Anita Chabria, Richard Winton, Rosanna Xia, Connor Sheets, *Officials knew about oil off O.C. coast Friday, sparking new questions about response*, LA Times (Oct. 4, 2021 9:04 P.M.), https://www.latimes.com/california/story/2021-10-04/oil-spill-amplify-energy-notification-pipeline?_amp=true.

[2] Associated Press, *Pipeline owner suspected in Orange County oil spill had been cited for violations 72 times*, KTLA5 (Oct. 4, 2021 8:43 P.M.), https://ktla.com/news/local-news/oil-platform-owner-in-orange-county-spill-previously-faced-bankruptcy-history-of-regulatory-problems/.

[3] Casey Tolan, *Operator of leaking oil infrastructure has record of violations*, CNN (Oct. 4, 2021 3:14 P.M.), https://www.cnn.com/2021/10/04/us/beta-operating-company-violations/index.html.

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

2.      What makes Defendants' failure so egregious is that their pipeline runs under the Pacific Ocean through a precious maritime ecosystem and near heavily populated Orange County. The spill sent highly toxic crude oil into the ocean and onto land, killing fish and wildlife, forcing the closure of fisheries and harbors, and soiling world-famous Southern California beaches and beachfront communities.

3.      By the time Defendants managed to shut down their offshore pipeline, it had discharged as much as 131,000 gallons of crude oil.[4] As of October 7, 2021, *23 miles* of formerly pristine California coastline, from Huntington Beach to Dana Point, were restricted to the public as the oil spill overran beaches and protected wetlands, and threatened to engulf harbors.[5] As of Friday, October 8, 2021, there were reports that San Diego County may declare a state of emergency as a result of tar balls likely related to the spill washing up on its beaches.[6]

4.      Cleanup efforts stretch from Sunset Beach in Huntington Beach to San Diego County.[7] As of Sunday, October 10, 2021, those efforts included more than 1,600 workers, who have recovered 5,544 total gallons of crude oil by vessel, 13.6 barrels of tar balls, and approximately 250,000 pounds of oily debris from the shorelines. In addition, 11,400 feet of containment boom had been deployed.[8]

---

[4] Hannah Fry, et al. *Oil spill off Orange County coast is smaller than estimated, Coast Guard says*, Los Angeles Times (Oct. 8, 2021), https://www.latimes.com/california/story/2021-10-08/coast-guard-downgrades-total-amount-california-oil-spill.

[5] CBSLA Staff, *Enormous Huntington Beach Oil Spill Closes Dana Point Harbor Indefinitely*, CBS Los Angeles (Oct. 5, 2021 10:31 A.M.), https://losangeles.cbslocal.com/2021/10/05/enormous-huntington-beach-oil-spill-closes-dana-point-harbor-indefinitely/.

[6] Dakin Andonne, *Tar Balls possibly linked to California oil spill are appearing on San Diego beaches amid fears environmental impact is spreading*, CNN, October 8, 2021 9:55 A.M.) https://www.cnn.com/2021/10/08/us/california-oil-spill-friday/index.html?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+rss%2Fcnn_topstories+%28RSS%3A+CNN+-+Top+Stories%29

[7] Hannah Fry, et al. *Oil spill off Orange County coast is smaller than estimated, Coast Guard says*, Los Angeles Times (Oct. 8, 2021), https://www.latimes.com/california/story/2021-10-08/coast-guard-downgrades-total-amount-california-oil-spill.

[8] CBSLA Staff, *City And State Beaches In Huntington Beach Reopen Monday*,

5.     These formerly pristine waters are home to hundreds of sensitive animal species, including whales and sea turtles, as well as bountiful schools of commercial fish and shellfish that serve as the backbone for the local commercial fishing industry, sports fishing, and whale watching industries. These industries rely on the healthy aquatic life of this delicate offshore ecosystem. Defendants' catastrophic spill has upended that delicate equilibrium. Its effects will affect the livelihoods of these formerly vibrant local communities for years to come. As of Sunday, October 11, 2021, 58 different species of birds and fish had reportedly been impacted by the spill.[9]

6.     The wildlife and the commercial industries that rely on wildlife were not the only victims of this disaster. Property owners and lessees along the coast pay a premium to enjoy the benefits of beachfront living. The thousands of gallons of toxic crude oil that washed onto their beaches fouled their properties, the water that they swim in, and the sand and beach activities they enjoy. Like the commercial and sport fishing industries, coastal real property owners and lessees will suffers harms for a considerable period to come, as the toxic oil damages the local ecosystem and their properties, and tarnishes the reputation of Southern California's beaches.

7.     Defendants could have averted this disaster. Their failure to maintain and monitor the pipeline led to its rupture. Moreover, their cataclysmic failure to discover their own leak for many hours turned what could have been a containable problem into an unmitigated environmental disaster.

8.     Defendants either lacked or ignored the basic industry-standard safety equipment that would have recognized the telltale signs of a spill: a decrease in the pressure of the pipeline and a change in the flow rate of oil. As recently as 2016,

KCAL9 CBS Los Angeles (Oct. 11, 2021),
https://losangeles.cbslocal.com/2021/10/11/city-and-state-beaches-in-huntington-beach-to-open-monday-morning/.
[9] *Id.*

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

1    Defendants claimed that their safety system would detect a spill of this magnitude
2    in a matter of minutes. Instead, local residents, fishermen, and other entities were
3    the first to learn of the spill and notify authorities after smelling toxic oil and seeing
4    a massive oil sheen on the water.

5         9.     Because Defendants failed to detect the spill, they also failed to stop
6    pumping copious amounts of oil through the ruptured pipeline, and failed to close
7    valves that could have prevented oil from escaping. Defendants did not notify the
8    authorities until over **15 hours** after the spill began—and only after consulting the
9    company's risk management firm[10]—impeding clean-up efforts and violating
10   Defendants' own policies. In short, because of Defendants' incompetence and
11   callous disregard of industry-standard safety measures, the disaster engulfing
12   Southern California continues to unfold.

13        10.    Plaintiffs brings this action pursuant to Federal Rule of Civil
14   Procedure 23 on their own behalf and as a representatives of others similarly
15   situated to recover significant losses they have incurred and will continue to
16   incur because of Defendants' oil spill.

17                          **III.   PARTIES**

18        11.    Plaintiff Davey's Locker Sportfishing, Inc. is a California corporation
19   doing business in Newport Beach, Orange County, California.

20        12.    Plaintiff Blue Pacific Fisheries is a California corporation doing
21   business as a commercial fisher in Newport Beach, Orange County, California.

22        13.    Plaintiffs Ivar Southern and Linda Southern are residents and citizens
23   of Orange County, California doing business as commercial fishers in Orange
24   County.

25

26

27   _____
     [10] Anita Chabria, et al., *Pipeline company evades questions over a 15-hour gap*
     *before reporting oil spill*, Los Angeles Times (Oct. 9, 2021),
28   https://www.latimes.com/california/story/2021-10-09/oil-spill-timeline-questions-
     contradictions.

14.     Plaintiff Newport Landing Sportfishing, Inc. is a California corporation doing business in Newport Beach, Orange County, California.

15.     Plaintiff San Pedro Bait Company is a California corporation doing business as a commercial fisher in Newport Beach, Orange County, California.

16.     Plaintiffs Donald C. Brockman and Heidi M. Jacques are residents and citizens of Orange County, California doing business as commercial fishers in Orange County. Mr. Brockman is the trustee of the Donald C. Brockman Trust and Ms. Jacques is the trustee of the Heidi M. Brockman Trust.

17.     Plaintiff Gregory Hexberg is a resident and citizen of Laguna Beach, Orange County, California. He is the trustee of The Gregory C. and Deborah L. Hexberg Family Trust.

18.     Defendant Amplify Energy Corp. ("Amplify") is a corporation formed in Delaware with its headquarters and principal place of business in Houston, Texas.

19.     Defendant Beta Operating Company, LLC, doing business as Beta Offshore, is a limited liability corporation formed in Delaware with its headquarters and principal place of business in Long Beach, California. Defendant Beta Operative Company, LLC, is a subsidiary of Defendant Amplify Energy Corp.

20.     Defendant San Pedro Bay Pipeline Company is a corporation formed in California with its headquarters and principal place of business in Long Beach, California. Defendant San Pedro Bay Pipeline Company is a subsidiary of Defendant Amplify Energy Corp.

21.     Defendants are private businesses, engaged in the business of transporting oil to private entities for commercial purposes. Defendants own and operate three offshore oil platforms and a 17.5-mile pipeline off the coast of Southern California. Defendant Beta Offshore owns and operates the three oil platforms, known as Elly, Ellen, and Eureka. Defendant San Pedro Bay Pipeline Company owns and operates the 17.5 miles pipeline that transports crude oil from

the Elly platform to the Port of Long Beach. Defendant Amplify is the parent
company of both San Pedro Pipeline Company and Beta Offshore.

### IV.   JURISDICTION AND VENUE

22.   This Court has jurisdiction over this action pursuant to Class Action
Fairness Act (CAFA), 28 U.S.C. § 1332(d), because at least one class member is of
diverse citizenship from one defendant; there are more than 100 class members; and
the aggregate amount in controversy exceeds $5 million, exclusive of interest and
costs.

23.   This Court also has jurisdiction over this action pursuant to 28 U.S.C.
§ 1331 because it arises under the laws of the United States, in particular the Oil
Pollution Act, 33 U.S.C. § 2717(b).

24.   This Court has personal jurisdiction over Defendants because they are
registered to conduct business in California, and have sufficient minimum contacts
with California.

25.   Venue is proper in this District under 28 U.S.C. § 1391(b) because a
substantial part of the events or omissions giving rise to the claims occurred and/or
emanated from this District, and because Defendants have caused harm to Class
members residing in this District.

### V.   FACTS

**A.   The Southern California Coast**

26.   The blue waters and beautiful coastline of Southern California are
world famous. They are home to an abundance of sea life, including sea turtles,
dolphins, migrating whales, and a myriad of fish that sustain thriving commercial
fishing, sports fishing, and whale watching industries.

27.   Because of its natural bounty and beauty, homeowners seek out the
desirable Southern California Coast. Today, the economic life in this region
revolves around its waters and postcard beaches. Thousands of people in Orange
County depend on the ocean and beaches for their jobs, including fishing, tourism,

and recreation. Beachfront property owners enjoy direct access to blue waters, a magnificent coastline and the amenities that oceanfront living provides: clean air, turquoise ocean, pristine sand, and spectacular sunsets.

**B.      The Rupture**

28.     Defendants own and operate at least three offshore platforms off the coast of Southern California—the Eureka the Elly, and the Ellen. Defendants' pipeline transports oil from these offshore platforms to Long Beach, where the oil is distributed to market. The Eureka and Ellen platforms pull oil from under the ocean floor and pump this oil to the Elly, a processing platform, by means of an underground pipeline. From Elly, the oil is transported to shore through a 17.5-mile pipeline that is 80 to 100 feet below the ocean's surface. The pipeline traverses a High Consequence Area (HCA) as defined in 49 C.F.R. § 195.450, and an ecologically unusually sensitive area as defined in § 195.6. Operators of pipelines in an HCA must take special precautions to prevent a spill and mitigate its impacts.



29.    On the evening of Friday October 1, 2021, at 6:30 p.m., Orange

County residents began emailing each other asking if their neighbors smelled toxic

oil in the air.[11] Residents also reported an oil sheen on the water to the Coast Guard.[12] By 7:00 p.m., satellite imagery suggested a spill. At around 7:30 p.m. the Newport Police Department informed residents not to call 911 for a gas smell throughout the city, because the calls were overwhelming the switchboard. Satellite imagery confirmed an oil slick forming around 10:58 p.m. that night.[13]

30.     By 2:00 a.m. Saturday, October 2, 2021, the National Oceanic and Atmospheric Administration ("NOAA") reported or received confirmation of a likely spill. Approximately 30 minutes later—a full six hours after residents smelled noxious odors in the air—a low-pressure alarm went off at Beta Offshore's control room.[14] A low-pressure alarm is a telltale sign of a rupture. According to 10 former and current employees of Defendants and Defendants' internal spill response plan, the alarm should have triggered rapid phone calls to managers, regulators, and the U.S. Coast Guard, and swiftly set in motion steps to shut down the pipeline and the platforms that feed it.[15] Instead, Defendants continued to pump oil through the pipeline unabated for hours thereafter.

---

[11] Associated Press, *Pipeline owner suspected in Orange County oil spill had been cited for violations 72 times*, KTLA5 (Oct. 4, 2021 8:43 P.M.), https://ktla.com/news/local-news/oil-platform-owner-in-orange-county-spill-previously-faced-bankruptcy-history-of-regulatory-problems/.

[12] Associated Press, *OC oil spill: Underwater pipeline was split open, moved more than 100 feet, officials say*, ABC 7 (Oct. 5, 2021 10:13 A.M.), https://abc7.com/oc-oil-spill-pipeline-was-split-open-and-displaced-officials-say/11085759/.

[13] Robert Tuttle and John Gittelsohn, *Global Supply Chain Nightmare May Be Behind California Oil Spill*, Bloomberg (Oct. 7, 2021 9:05 A.M.), https://www.bloomberg.com/news/articles/2021-10-06/california-oil-spill-cause-may-have-been-ship-anchor-crowded-port.

[14] Carolina Lumetta, *Investigation finds oil pipeline leaked for hours*, World Digital (Oct. 6, 2021), https://wng.org/sift/investigation-finds-delays-in-calif-oil-spill-response-1633560518; Eric Levenson, *A timeline of the California oil spill, from the first report to the clean-up*, CNN (Oct. 6, 2021 3:59 P.M.), https://www.cnn.com/2021/10/06/us/huntington-beach-california-oil-spill-timeline/index.html; Jessica Resnick-ault and Nichola Groom, *Despite preparation, California pipeline operator may have taken hours to stop leak, Reuters* (October 8, 2021 7:41 A.M.), *https://www.reuters.com/business/energy/despite-preparation-california-pipeline-operator-may-have-taken-hours-stop-leak-2021-10-08/.*

[15] Jessica Resnick-ault and Nichola Groom, *Despite preparation, California pipeline operator may have taken hours to stop leak, Reuters* (October 8, 2021 7:41

31.     In the aftermath of the rupture, Amplify's CEO claimed that the company shut down the pipeline at 6 a.m. on Saturday, October 2, 2021, over ***12 hours*** after residents smelled oil. Defendants have not confirmed when they closed valves in the pipeline, which would have prevented any oil left in the pipeline from spilling out into the ocean. ***Two hours later***, at 8 a.m., Defendants allegedly determined what was obvious to residents, fishers, and NOAA—that there was an oil spill. The company then waited ***another hour*** before reporting the spill to the National Response Center.[16]

32.     It is now known that the pipeline had a thirteen-inch crack from which oil was released, and that over 4,000 feet of the pipeline was not where it was supposed to be. Investigators believe the pipeline could have been displaced for months to a year prior to the rupture, possibly from contact with a ship's anchor.[17] As Orange County Supervisor Katrina Foley demanded to know on Saturday, October 9, 2021, "Why didn't the oil company know their pipeline was damaged? Why didn't they fix it or at least turn off the valve?"[18]

33.     The below photos show the crack in the pipeline:[19]

_____

A.M.), *https://www.reuters.com/business/energy/despite-preparation-california-pipeline-opera-have-taken-hours-stop-leak-2021-10-08/.*

[16] Carolina Lumetta, *Investigation finds oil pipeline leaked for hours*, World Digital (Oct. 6, 2021), https://wng.org/sift/investigation-finds-delays-in-calif-oil-spill-response-1633560518; Press Release, Southern California Oil Spill, Amplify Energy Corp. (Oct. 4, 2021), https://www.amplifyenergy.com/investor-relations/press-releases/press-release-details/2021/Southern-California-Oil-Spill/default.aspx.

[17] Dakin Andone, *Pipeline crack in California oil spill may have occurred up to a year ago, investigators say*, CNN (Oct. 8, 2021), https://www.cnn.com/2021/10/08/us/california-oil-spill-friday/index.html.

[18] Supervisor Katrina Foley, Oct. 9, 2021 Tweet, https://twitter.com/SupervisorFoley/status/1447015401922052097?s=20.

[19] US Coast Guard via Reuters, *U.S. Coast Guard probes whether ship struck California oil pipeline,* Reuters (Oct. 7, 2021), https://www.reuters.com/news/picture/us-coast-guard-probes-whether-ship-struc-idUSRTXI885B.

PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL CASE NO.8:21-CV-1684

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



- 11 -

**C.** **The Catastrophic Consequences of Defendants' Failure to Detect Their Own Spill.**

34.     Because Defendants did not shut down the pipeline, reduce the flow of oil, or close crucial valves for hours, the spill grew to disastrous proportions, now estimated at as much as 131,000 gallons of toxic crude oil. This unconscionable delay was fed in part by attempts at internal damage control.[20]

35.     The disastrous impact of the spill is rapidly coming into view. On the morning of Saturday, October 2nd, 2021, fishing boats and yacht charters experienced the ongoing spill firsthand. Surrounded by oil, they were forced to return to local marinas because their hulls were covered in toxic sludge.[21] The oil spill created a slick that stretched for dozens of miles. For example, oil from the spill has washed up on Huntington Beach and the Talbert March wetlands, an area home to vibrant bird life such as great blue herons, pelicans, and endangered California lease terns, which migrate up the Pacific Coast. The below photos are but a few examples of the damage to these precious habitats:[22]

---

[20] Anita Chabria, et al., *Pipeline company evades questions over a 15-hour gap before reporting oil spill*, Los Angeles Times (Oct. 9, 2021), https://www.latimes.com/california/story/2021-10-09/oil-spill-timeline-questions-contradictions.

[21] Associated Press, *Pipeline owner suspected in Orange County oil spill had been cited for violations 72 times*, KTLA5 (Oct. 4, 2021 8:43 P.M.), https://ktla.com/news/local-news/oil-platform-owner-in-orange-county-spill-previously-faced-bankruptcy-history-of-regulatory-problems/.

[22] US Coast Guard via Reuters, *U.S. Coast Guard probes whether ship struck California oil pipeline,* Reuters (Oct. 7, 2021), https://www.reuters.com/news/picture/us-coast-guard-probes-whether-ship-struc-idUSRTXI885B.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



A bird walks through a small oil slick in the Talbert Channel after a major oil spill off the coast of California has come ashore in Huntington Beach, California, October 3. REUTERS/Gene Blevins



Oil stains are left behind on the State Beach that was closed down after a major oil spill off the coast of California has come ashore in Huntington Beach, California, October 3. REUTERS/Gene Blevins

- 13 -

36.     The coast is also home to sea turtles, dolphins, and whales, in addition to commercial fish and shellfish such as squid, tuna, sea bass, and lobsters.[23] Dolphins were seen swimming through the toxic oil, dead fished washed up onto beaches, and residents were encouraged not to approach "oiled wildlife."[24] In the words of State Director of Environment California Laura Deehan, "[t]his spill threatens all of them."[25]

37.     As the toxic oil slick spreads via ocean currents, other birds and marine life will continue to die, including in important marine nesting areas. Photos of this all-too-familiar and preventable tragedy show how the spill has immediately affected the marine ecosystem:[26]

---

[23] Joe Hernandez, *A massive oil spill in the Pacific Ocean has reached the Southern California coast*, NPR (Oct. 3, 20211:31 P.M.), https://www.npr.org/2021/10/03/1042846846/a-massive-oil-spill-in-the-pacific-ocean-has-reached-the-southern-california-coa.

[24] *Id.*

[25] *Id.*

[26] Benji Jones, Why the Huntington Beach oil spill is so harmful to wildlife, Vox (Oct. 6, 2021 9:00 A.M.), https://www.vox.com/down-to-earth/22708654/oil-spills-wildlife-huntington-beach-california; US Coast Guard via Reuters, *U.S. Coast Guard probes whether ship struck California oil pipeline,* Reuters (Oct. 7, 2021), https://www.reuters.com/news/picture/us-coast-guard-probes-whether-ship-struc-idUSRTXI885B; Fox11 Los Angeles, *OC oil spill: Over 2 dozen oiled birds recovered; wildlife greatly impacted* (Oct. 7, 2021), https://www.foxla.com/news/oc-oil-spill-oiled-birds-recovered-wildlife-greatly-impacted; Caleigh Wells, *Birds struggle to survive after OC oil spill*, KCRW (Oct. 7, 2021), https://www.kcrw.com/news/shows/greater-la/oil-spill-the-sidewalk-project-forest-lawn-museum/birds-wildlife-rescue-oc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



A dead fish that washed ashore in Huntington Beach, California, after the spill.  |  Ringo H.W. Chiu/AP



A fish swims under oil slicks in the Talbert Channel after a major oil spill off the coast of California has come ashore in Huntington Beach, California, October 3. REUTERS/Gene Blevins

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684



38.    Much of the damage is out of sight but will continue for years. Many

fish and invertebrates start their lives as larvae, including lobsters.[27] Larvae are

---

[27] Dan Cabot, *Life Cycle of a lobster*, MV Times (Jul. 8, 2010),
https://www.mvtimes.com/2010/07/08/life-cycle-lobster-1446/.

1    highly vulnerable to the effects of oil. Accordingly, their populations can be
2    expected to fall in the years ahead.[28]

3        39.    Crude oil can also kill a vast amount of phytoplankton. Phytoplankton
4    feeds countless smaller creatures that are microscopic, but are the base of the food
5    chain. Spills also damage plants, which have similar ramifications for the broader
6    ecosystem.[29]

7        40.    Additionally, the spill will affect the health, migrations, and
8    movements of whales, dolphins, and sea turtles, negatively impacting the local
9    whale watching industry. Marine mammals like whales and dolphins have to
10   surface to breathe, and if they come up for air through an oil slick, they can suck the
11   toxic substance into their lungs. When they surface in an area even nearby an oil
12   spill, they – like humans – can inhale the toxic chemicals evaporating from the
13   surface of the oil. Additionally, oil spills can kill smaller animals, such as krill, that
14   are eaten by whales and the fish that dolphins eat.[30]

15       41.    Sea turtles, including Green Turtles, Loggerheads, Olive Ridley, and
16   Leatherback, inhabit the waters of Southern California. It is here that they feed and
17   grow, foraging on invertebrates, seaweed, and sea grasses from the San Diego Bay
18   up to the San Gabriel River in Long Beach. They forage in the open water by day
19   and move into protected bays, lagoons, and estuaries at night. The spill has polluted
20   their food supply and the coastal areas where they rest. Additionally, because of the
21   spill, booms and other protective equipment will prevent these species from

22

23

24

25   [28] Benji Jones, *Why the Huntington Beach oil spill is so harmful to wildlife*, Vox
     (Oct. 6, 2021 9:00 A.M.), https://www.vox.com/down-to-earth/22708654/oil-spills-
26   wildlife-huntington-beach-california.
     [29] *Id.*
27   [30] WDC, https://us.whales.org/our-4-goals/create-healthy-seas/ocean-pollution/
28   (last visited Oct. 7, 2021).

moving, trapping them in oiled waters and disrupting their feeding and resting patterns.[31]

42.     In short, the impacts of the spill are disastrous and ongoing. The effects of the spill will continue to wreak havoc on this delicate marine ecosystem, killing fish, shellfish, their larvae, and the food necessary for their survival.

43.     As a result of the spill and Defendants' failure to contain it, the California Department of Fish and Wildlife has been forced to close previously lucrative offshore fisheries due to the public health threat caused by the oil spill into marine waters. To date, 11 formerly lucrative fishing blocks have now been closed in whole or in part as a result of the spill, as shown below.[32] Oil may continue to spread, contaminating additional fishing blocks and destroying the delicate ecosystem that supports the commercial fishing, sportfishing, and whale watching industries.

---

[31] Sports Fishing Association of California, https://www.californiasportfishing.org/single-post/2016/06/30/southern-california-sea-turtles (last visited Oct. 7, 2021).

[32] California Department of Fish and Wildlife, *Amended Declaration Of Fisheries Closure Due To A Public Health Threat Caused By An Oil Spill Into Marine Water* (Oct. 8, 2021), https://socalspillresponse-com-jtti.s3.us-west-2.amazonaws.com/wp-content/uploads/2021/10/07174741/CDFW-Declaration-Amendment_2_10.07.21.pdf.

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18      44.     Authorities were also forced to close the entrances to Newport Harbor

19   and Dana Point Harbor to vessel traffic.[33] The emergency action was taken to help

20   prevent more oil from entering the harbors. Accordingly, all boats were prevented

21   from entering or exiting the harbors.[34] These harbors are home to a significant sport

22

23   [33] CBSLA Staff, *Enormous Huntington Beach Oil Spill Closes Dana Point Harbor*
24   *Indefinitely*, CBS Los Angeles (Oct. 5, 2021 10:31 A.M.),
     https://losangeles.cbslocal.com/2021/10/05/enormous-huntington-beach-oil-spill-
25   closes-dana-point-harbor-indefinitely/.
26   [34] Newport Indy Staff, *Entrance to Newport Harbor Temporarily Closed Due to Oil*
     *Spill*, Newport Beach Independent (Oct. 4, 2021),
     https://www.newportbeachindy.com/entrance-to-newport-harbor-temporarily-
27   closed-due-to-oil-spill/; Sonya Quick, *Dana Point Harbor is Latest Closure Along*
     *OC's Coast in Efforts to Prevent Exposure to and Spread of Crude Oil*, Voice of
28   OC (Oct. 5, 2021), https://voiceofoc.org/2021/10/dana-point-harbor-is-latest-
     closure-along-ocs-coast-in-efforts-to-prevent-exposure-and-spread-of-crude-oil/.

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

fishing and whale watching industry. This industry has been uniformly shut down as a result of the spill.

45.     The spill's impacts extend beyond industries that rely on a healthy aquatic ecosystem. On October 3, 2021, the OC Health Care Agency issued a health advisory for residents exposed to oil contaminants, warning that the "effects of oil spills on humans may be direct and indirect," and requested that residents "refrain from participating in recreational activities on the coastline such as swimming, surfing, biking, walking, exercising, gathering, etc."[35] The Agency advised that spilled oil, which can contain toxic chemicals, poses health threats via skin contact or inhalation. Symptoms of "excessive exposure to oil or dispersants commonly include the following: skin, eye, nose and throat irritation; headache; dizziness; upset stomach; vomiting; cough or shortness of breath."[36]

46.     In Huntington Beach, California, known as "Surf City USA," the entire shoreline was closed between the Santa Ana River Jetty and Seaport Street. All city and county beaches in Laguna Beach, including Aliso Beach, Laguna Royale, Tablerock Beach, Thousand Steps Beach, and West Street Beach were closed. The map below indicates the many miles of formerly pristine coastal beaches that were closed because of the spill, along with water advisories extending up from Seaport Street all the way north to Seal Beach.[37]

---

[35] Press Release, OC Health Care Agency Issues Health Advisory For Residents Exposed To Oil Contaminants, OC Health Care Agency (Oct. 3, 2021), https://mailchi.mp/ochca/hca-health-advisory-re-oil-spill-10114934.
[36] *Id.*
[37] Tess Sheets, *Planning a Southern California beach trip? These beaches are closed by the oil spill*, East Bay Times (Oct. 5, 2021 7:35 A.M.), https://www.eastbaytimes.com/2021/10/05/heres-what-beaches-are-off-limits-as-officials-work-to-contain-massive-oil-spill/.

1
2
3
4
5
6
7
8
9
10
11
12
13



14    47.    As the oil spill's effects continue to unfold, beaches as far south has in

15  Dana Point were closed as of Tuesday morning, October 5, 2021. In short, over *23*

16  *miles* of shoreline had been restricted to protect the public from toxic exposure to

17  crude oil.[38] As of Friday October 8, 2021, tarballs were reported to be washing up

18  along the San Diego coastline and beachgoers were warned of the toxic effects of

19  the oil.[39]

20    48.    Real property owners and shoreline residential properties are on the

21  spill's front lines. The beachfront properties along the Southern Coast of California,

22

23  [38] CBSLA Staff, *Enormous Huntington Beach Oil Spill Closes Dana Point Harbor*
24  *Indefinitely*, CBS Los Angeles (Oct. 5, 2021 10:31 A.M.),
    https://losangeles.cbslocal.com/2021/10/05/enormous-huntington-beach-oil-spill-
25  closes-dana-point-harbor-indefinitely/.
    [39] Dakin Andone, *Pipeline crack in California oil spill may have occurred up to a*
26  *year ago, investigators say*, CNN (Oct. 8, 2021),
    https://www.cnn.com/2021/10/08/us/california-oil-spill-friday/index.html; City
27  News Service, *Unified command responds to oil spill in San Diego, Orange*
    *Counties*, ABC 10 News San Diego (Oct. 10, 2021),
28  https://www.10news.com/news/local-news/san-diego-news/unified-command-
    responds-to-oil-spill-in-san-diego-orange-counties.

like coastal properties throughout the state, are highly valuable. The property owners and tenants enjoy the unspoiled sand and water, and direct access to fishing, surfing, kayaking, and other activities. As a result of the spill – its toxic stench, the fouling of the ocean, and oil that has washed up onto beaches and properties – occupants of beachfront real property along miles of formerly pristine beaches have lost the use of key features of their properties. These homeowners may also be forced to remediate the damage to their properties by themselves

49.     On October 4, 2021, Governor Gavin Newsom called for a state of emergency, finding the conditions caused by the oil spill, by reason of its magnitude, to be beyond the control of local government, and sought to utilize all available resources to support the response, cleanup, and mitigation of the oil spill.[40] Governor Newsom stated the "oil release has impacted and continues to threaten the environment and marine life in the area, including marine mammals, birds, and fish," as well as "reached the Huntington Beach shoreline and threatens numerous jurisdictions long the coast, resulting in beach closures."

**D.     This Catastrophe Never Should Have Happened.**

50.     Defendants could have averted this spill had they properly maintained and monitored their pipeline. Defendants should have automatically shut down the pipeline immediately following the rupture, before residents noticed an oil sheen. Defendants should have been the first to notice the spill and alert authorities. Indeed, if the pipeline contained industry-standard safety alarms properly set to measure a drop in pressure and/or a change in the flow rate of oil, the pipeline should have shut down soon after the rupture.[41] Additionally, valves would have shut, preventing the approximately seventeen-mile pipeline from releasing all of its

---

[40] Executive Department State of California, *Proclamation of a State of Emergency*, (Oct. 4, 2021), https://www.gov.ca.gov/wp-content/uploads/2021/10/10.4.2021-Oil-Spill-SOE-signed.pdf.

[41] Associated Press, *OC oil spill: Underwater pipeline was split open, moved more than 100 feet, officials say*, ABC7 (Oct. 5, 2021 10:13 P.M.), https://abc7.com/oc-oil-spill-pipeline-was-split-open-and-displaced-officials-say/11085759/.

PLAINTIFFS' CLASS ACTION COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO.8:21-CV-1684

oil into the water. As is now evident, Defendants lacked or ignored this industry-standard safety alarms and equipment.

51.     Defendants also violated their own integrity management plan. According to Defendants, the pipeline was monitored by an automatic leak detection system that reported problems to a control room in Houston staffed around-the-clock. According to Defendants, the system was designed to trigger an alarm when a change in oil flow occurred. That did not happen. For a spill of this size, with 10% or more of the oil flowing through the pipeline, the Defendants' integrity management plan pegged the detection time at 5 minutes.[42] Defendants did not detect the spill until long after five minutes, in violation of their own integrity management plan.

52.     Defendants violated their integrity management plan in other ways as well. For example, Defendants' integrity management plan stated that for smaller levels amounting to less than 10% of the oil flowing through their pipeline, Defendants' system was designed to detect the spill in 50 minutes or less. As is now clear, Defendants did not detect the spill in 50 minutes or less, or for quite some time thereafter.

53.     Additionally, Defendants' spill response plan from 2016 stated that they would immediately notify federal officials when more than one barrel was released into the water. When more than five barrels were released into the water, or a release threatens state waters or the shoreline, as this spill clearly did, Defendants were required to notify the state fire marshal and California wildlife officials immediately.[43]

54.     Defendants, however, were not the first to notify authorities. After the public noticed the spill, two calls came into the National Response Center staffed

---

[42] *Id.*
[43] *Id.*

by the Coast Guard. The first call, from an anchored ship, reported a sheen on the water. The second call came six hours later from a federal agency that said that satellite imagery showed an oil slick.[44] It took Defendants hours from the times of these calls to notify officials of the oil spill. Indeed, as described above, Defendants waited *an hour* to notify the authorities even after they finally recognized that they had caused a spill.

55.     This lawsuit seeks to compensate the victims of the spill and to ensure that Defendants are prevented from causing additional damage to the regional economy and environment in the future.

**E.     Defendants have a long history of safety violations.**

56.     Defendants are not strangers to oil spills and negligently operating their pipeline systems.

57.     The Bureau of Safety and Environmental Enforcement, a federal agency that oversees the offshore drilling industry, has documented 125 instances of non-compliance; 53 of these instances were warmings, 71 were component shut-in violations, and one was a facility shut-in violation. Shut-in violations require the operators to pause operations and correct the problem before resuming.

58.     According to Bureau records, Beta Offshore was fined a total of $85,000 in 2013 and 2014 for three incidents, including one that involved the release of oil. Beta Offshore received its last violation on September 29, 2021, just days before the spill.[45]

# VI.     PLAINTIFFS' FACTS

**A.     Plaintiff Davey's Locker Sportfishing, Inc.**

59.     Plaintiff Davey's Locker Sportfishing, Inc. is a California corporation doing business at 400 Main Street, Newport Beach, in Orange County, California.

---

[44] *Id.*

[45] Casey Tolan, *Operator of leaking oil infrastructure has record of violations*, CNN (Oct. 4, 2021 3:14 P.M.), https://www.cnn.com/2021/10/04/us/beta-operating-company-violations/index.html.

60.     Since 1958, Davey's Locker has offered deep sea fishing and whale and dolphin watching excursions, as well as charter fishing boats and private boat rentals, to its customers out of Newport Harbor.

61.     The oil spill closed Newport Harbor and closed fisheries between Sunset Beach to San Clemente out six nautical miles from the coast, preventing Davey's Locker's boats from leaving the harbor and from running its business offering excursions and rentals.

62.     Davey's Locker believes the negative consequences of Defendants' oil spill will continue to depress the business for the remainder of the year and possibly for years to come. Defendants' acts and omissions have therefore caused present injury to Davey's Locker, as well as the concrete risk of imminent, additional injury.

63.     Plaintiff Davey's Locker is a member of and seeks to represent the Marine Charter Class, as defined and proposed below.

**B.     Plaintiff Blue Pacific Fisheries**

64.     Plaintiff Blue Pacific Fisheries is a California corporation owned and operated by Brian Blair.

65.     Blue Pacific Fisheries' boat is a 45-foot Millenium Marine named Ultra Pacific. It has a crew size between one and three fishermen. Blue Pacific Fisheries has multiple commercial fishing licenses, including for squid, rock crab, and groundfish.

66.     On Saturday morning, October 2, 2021, Mr. Blair was in his boat, anchored in the ocean watching the Pacific Airshow with his young son. While he and his son were swimming, they began to smell oil in the water around them. They immediately exited the water. They discovered oil residue covering the boat hull. Mr. Blair attempted to return to Newport Harbor, but could not access the harbor because it had been closed as a result of the spill. He was forced to dock in Avalon Bay on Catalina Island until able to return to Newport Harbor. The photo below of

oil fouling the water was taken by Mr. Blair from his boat while anchored off
Newport Harbor watching the Pacific Air Show.



67.    But for the spill, Mr. Blair would have been fishing for squid and
groundfish, which he sells to wholesalers in Newport Harbor. He cannot fish
because the fishing blocks where he fishes are closed as a result of the spill, he
cannot sell in Newport Harbor because the harbor is closed as a result of the spill,
and the wholesalers are closed as a result of the spill.

68.    Plaintiff Blue Pacific Fisheries believes the negative consequences of
Defendants' oil spill will continue to depress the business for the remainder of the
year and possibly for years to come. Defendants' acts and omissions have therefore
caused present injury to Plaintiff Blue Pacific Fisheries, as well as the concrete risk
of imminent, additional injury.

69.    Plaintiff Blue Pacific Fisheries is a member of and seeks to represent
the Commercial Fishing Class, as defined and proposed below.

**C.     Plaintiffs Ivar Southern and Linda Southern**

70.     Plaintiffs Ivar Southern and Linda Southern are residents and citizens of Orange County, California.

71.     Plaintiff Ivar Southern and his mother Plaintiff Linda Southern are commercial fishers with a 24 foot boat named Linda Faye and have been fishing lobster out of Newport Harbor since 1991.

72.     Lobster season this year began on October 2, 2021 at 6:00 a.m. and runs to March 16, 2022. Plaintiffs currently have 297 lobster traps sitting in fishing blocks 718, 739 and 738, which were dropped prior to the season opening. Due to the oil spill, Plaintiffs were not able to bait their traps, or even remove their traps, which are still out in the ocean.

73.     Plaintiffs fish for lobsters almost exclusively in the waters that were closed because of Defendants' oil spill and are uncertain when they will be able to fish lobster again. As a result, Plaintiffs face serious and potentially long-lasting harms because of Defendants' oil spill.

74.     Plaintiffs Ivar Southern and Linda Southern believe the negative consequences of Defendants' oil spill will continue to depress their commercial lobster fishing business for the remainder of the year and possibly for years to come. Defendants' acts and omissions have therefore caused present injury to Plaintiff Jones, as well as the concrete risk of imminent, additional injury.

75.     Plaintiff s Ivar Southern and Linda Southern are members of and seek to represent the Commercial Fishing Class, as defined and proposed below.

**D.     Plaintiff Newport Landing Sportfishing, Inc.**

76.     Plaintiff Newport Landing Sportfishing, Inc. is a California corporation doing business in Newport Beach, Orange County, California.

77.     Newport Landing Sportfishing, Inc. offers fishing trips and private charters to its sportfishing customers.

78.     The oil spill closed Newport Harbor and closed fisheries between Sunset Beach to San Clemente out six nautical miles from the coast, preventing its boats from leaving Newport Harbor and preventing Newport Landing Sportfishing from running its fishing trips.

79.     Newport Landing Sportfishing believes the negative consequences of Defendants' oil spill will continue to depress the business for the remainder of the year and possibly for years to come. Defendants' acts and omissions have therefore caused present injury to Newport Landing Sportfishing, as well as the concrete risk of imminent, additional injury.

80.     Plaintiff Newport Landing Sportfishing is a member of and seeks to represent the Marine Charter Class, as defined and proposed below.

**E.      Plaintiff San Pedro Bait Company**

81.     Plaintiff San Pedro Bait Company is a California corporation owned and operated by Mark J. Pisano.

82.     San Pedro Bait owns and operates two bait barges. One is located in Newport Harbor and the other is located in the Port of Los Angeles. San Pedro Bait Company provides live bait for the local sportfishing fleet and private boaters in the areas.

83.     San Pedro Bait also owns and operates two commercial fishing boats, the St. Catherine (56 feet) and the Bounty (40 feet).

84.     The oil spill closed Newport Harbor and closed fisheries between Sunset Beach to San Clemente out six nautical miles from the coast, preventing its boats from leaving Newport Harbor and preventing San Pedro Bait from running its commercial fishing business and providing bait to local fishers.

85.     San Pedro Bait believes the negative consequences of Defendants' oil spill will continue to depress the business for the remainder of the year and possibly for years to come. Defendants' acts and omissions have therefore caused present injury to San Pedro Bait, as well as the concrete risk of imminent, additional injury.

86.     Plaintiff San Pedro Bait is a member of and seeks to represent the Commercial Fishing Class and the Marine Charter Class, as defined and proposed below.

**F.      Plaintiffs Donald C. Brockman, individually and as trustee of the Donald C. Brockman Trust, and Heidi M. Jacques, individually and as trustee of the Heidi M. Brockman Trust**

87.     Plaintiffs Donald C. Brockman and Heidi M. Jacques are residents and citizens of Orange County, California. Dr. Brockman is the trustee of the Donald C. Brockman Trust and Ms. Jacques in the trustee of the Heidi M. Brockman Trust.

88.     The Donald C. Brockman Trust and Heidi M. Brockman Trust jointly own three commercial fishing boats: the Little Viking, a 31 ½ foot boat presently docked in Los Angeles with a crew of two; the Donz Rig, a 42 foot boat presently docked in Newport Harbor with a crew of two; and the Freelance, a 71 foot boat presently docked in Newport Harbor with a crew of five.

89.     Plaintiffs regularly fish for squid in open access fisheries on the boats above.

90.     The oil spill closed Newport Harbor and fisheries between Sunset Beach to San Clemente out six nautical miles from the coast, preventing Plaintiffs' boats from leaving Newport Harbor and preventing Plaintiffs from running their commercial fishing business.

91.     Plaintiffs believe the negative consequences of Defendants' oil spill will continue to depress the business for the remainder of the year and possibly for years to come. Defendants' acts and omissions have therefore caused present injury to Plaintiffs, as well as the concrete risk of imminent, additional injury.

92.     Plaintiffs Donald C. Brockman and Heidi M. Jacques, individually and as trustees of the Donald C. Brockman Trust and the Heidi M. Brockman Trust respectively, are members of and seek to represent the Commercial Fishing Class, as defined and proposed below.

1

2

**G.     Plaintiff Gregory Hexberg, individually and as trustee of the Gregory C. and Deborah L. Hexberg Family Trust**

3        93.     Gregory Hexberg is a citizen of Laguna Beach, Orange County,

4   California and the trustee of The Gregory C. and Deborah L. Hexberg Family Trust,

5   the owner of record of a single family home in the Emerald Bay Community

6   Association. Mr. Hexberg is also a member of the Emerald Bay Community

7   Association.

8        94.     The Emerald Bay Community Association is a California non-profit

9   mutual benefit corporation, which owns and maintains its Common Areas,

10  including the private beach in Emerald Bay. Mr. Hexberg, along with the owners of

11  the other 537 improved lots in the Emerald Bay Community Association, has the

12  exclusive right of access to the private beach in Emerald Bay

13       95.     The oil spill prevents Mr. Hexberg and his family from participating in

14  recreational activities on the beach that they regularly enjoy, such as swimming,

15  surfing, fishing, volleyball, biking, walking, exercising, gathering, etc.

16       96.     Although the full extent of the Mr. Hexberg's damages is unknown at

17  this time, he faces significant and potentially long-lasting harms because of

18  Defendants' oil spill, including remediation costs.

19       97.     Defendants' acts and omissions have therefore caused present injury to

20  Plaintiff Hexberg individually and as trustee of The Gregory C. and Deborah L.

21  Hexberg Family Trust, as well as the concrete risk of imminent, serious, and

22  additional injury.

23       98.     Plaintiff Gregory Hexberg, individual and as trustee of The Gregory C.

24  and Deborah L. Hexberg Family Trust, is a member of and seeks to represent the

25  Real Property Class, as defined and proposed below.

26

27

28

## VII. CLASS ACTION ALLEGATIONS

99. Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of classes of similarly situated persons. Plaintiffs initially propose three classes, as defined below:

### Commercial Fishing Class

Persons or entities who owned or worked on a commercial fishing vessel docked in Newport Harbor or Dana Point Harbor as of October 2, 2021, and/or who landed seafood within the California Department of Fish & Wildlife fishing blocks 718, 737, 738, 739, 756, 757, 758, 759, 802, 803, and 804 between October 2, 2011 and October 2, 2021 and were in operation as of October 2, 2021, as well as those persons and businesses who purchased and resold commercial seafood so landed, at the retail or wholesale level, that were in operation as of October 2, 2021.

### Marine Charter Class

Persons or entities who owned on worked on a vessel that engaged in the chartering of boats for the purposes of sport fishing and sea life observation, including whale watching, where the vessels docked in Newport Harbor or Dana Point Harbor as of October 2, 2021, and/or regularly operated within the California Department of Fish & Wildlife fishing blocks 718, 737, 738, 739, 756, 757, 758, 759, 802, 803, and 804 between October 2, 2011 and October 2, 2021 and were in operation as of October 2, 2021.

**Real Property Class**

> Owners or lessees of residential beachfront properties on
> a beach or residential properties with a private easement
> to a beach (collectively "Included Properties") located
> between Seaport Street in Huntington Beach, California,
> and the San Juan Creek in Dana Point, California.

100.   Plaintiffs Blue Pacific Fisheries, Ivar Southern and Linda Southern, San Pedro Bait, and Donald C. Brockman and Heidi M. Jacques, individually and as trustees of the Donald C. Brockman Trust and the Heidi M. Brockman Trust respectively, are members of and seek to represent the Commercial Fishing Class.

101.   Plaintiffs Davey's Locker, Newport Landing Sportfishing, and San Pedro Bait are members of and seek to represent the Marine Charter Class.

102.   Plaintiff Gregory Hexberg, individual and as trustee of The Gregory C. and Deborah L. Hexberg Family Trust, is a member of and seeks to represent the Real Property Class.

103.   Plaintiffs reserve the right to propose additional or more refined classes of Plaintiffs in connection with their Motion for Class Certification, and as determined by the Court in its discretion.

104.   The Classes plainly satisfy the requirements of Rule 23(a) and Rule 23(b) and there are no interclass conflicts.

105.   **Ascertainability**: The number and identity of class members can be easily ascertained. Because the oil spill was a distinct catastrophic event, the class members—who consist of fishers and fish buyers, beachfront property owners and lessees, and marine charter boat owners and workers who suffered economic harm—will not have difficulty discerning these injuries, or their cause. In October 2021, as a result of Defendants' oil spill, oil from Defendants' pipeline washed up on Class members' property, damaged their nets and equipment, affected their catch, forced their businesses to shut down, and affected customer demand, and

1  continues to do so. Those who can no longer work as a result of the spill are aware
2  of that fact. Similarly those whose properties or business were affected by the spill
3  and its lingering effects are aware of these facts and the resulting costs. Finally,
4  those in the fishing industry are well aware of any current or continuing changes to
5  the availability, quality, or demand for their products.

6      106.   **Numerosity**: The members of the Classes are so numerous that joinder
7  of all members is impractical. The proposed Classes likely contain hundreds if not
8  thousands of members.

9      107.   **Commonality**: There are common questions of law and fact that
10  predominate over any questions affecting only individual members of the Classes.

11      108.   For Plaintiffs and the Classes, the common legal and factual questions
12  include, but are not limited to, the following:

13          a.      Whether Defendants acted negligently, recklessly, wantonly,
14  and/or unlawfully to cause the spill;

15          b.      Whether Defendants installed and maintained adequate safety
16  measures and systems on the pipeline that ran from the Elly offshore oil platform to
17  the Port of Long Beach and in its systems of command and control to prevent
18  and/or mitigate the spill;

19          c.      Whether Defendants conducted adequate supervision that could
20  have prevented the spill or reduced its scale;

21          d.      Whether Defendants knowingly, intentionally, or negligently
22  concealed, suppressed, or omitted material facts concerning the safety of the
23  pipeline from the public;

24          e.      Whether Defendants knowingly, intentionally, or negligently
25  concealed, suppressed, omitted, or delayed relaying material facts regarding the
26  spill to local, state, and federal agencies, thereby slowing the response, and/or
27  increasing the damages to Plaintiffs and members of the Classes;

28

f.       Whether Plaintiffs and the Classes suffered injury by virtue of Defendants' negligence, recklessness, and carelessness; and

g.       Whether Defendants are strictly liable to Plaintiffs and the Classes, by virtue of state and/or federal laws.

109.   **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and all the members of the Classes have been injured by the same wrongful acts and omissions of Defendants. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes, and are based on the same legal theories.

110.   **Adequacy of Representation**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Classes.

111.   **Rule 23(b)(3)**: In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members of the Classes, and a class action is superior to individual litigation. The amount of damages available to most individual plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer case management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

112.   **Rule 23(c)(4)**: Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). The claims of members of the Classes are composed of particular issues that are common to all members of the Classes and capable of class wide resolution that will significantly advance the litigation.

# VIII.  <u>CAUSES OF ACTION</u>

### First Claim for Relief
### Strict Liability under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act,
### Government Code Section 8670, *et seq.*

(*On behalf of all Classes*)

113.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

114.   The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("the Act") provides that "[a]ny responsible party, as defined in Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured party which arise out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Cal. Gov't Code Section 8670.56.5(a).

115.   The Pacific Ocean and the waters off the Southern California Coast are "marine waters" as defined in Section 8670.03(i).

116.   Defendants are "responsible part[ies]," which includes "the owner or transporter of oil or a person or entity accepting responsibility for the oil."

117.   The oil transported through the pipeline is "oil" within the meaning of the Act, which defines "oil" as "any kind of petroleum, liquid hydrocarbon, or petroleum products or any fraction or residues therefrom," including "crude oil."

118.   As the responsible party for the oil transported through Defendants' pipeline, Defendants are absolutely liable under the Lempert-Keene-Seastrand Act.

119.   On or about October 1, 2021, Defendants discharged or leaked crude oil into the Pacific Ocean, and are therefore absolutely liable without regard to fault

1  for all damages that Plaintiffs and the Classes sustained or will sustain. That

2  discharge was not permitted by state or federal law.

3      120.   The Act entitles a plaintiff to recover a wide variety of damages,

4  including, but not limited to, loss of subsistence use of natural resources; injury to,

5  or economic losses resulting from destruction of or injury to, real or personal

6  property, which shall be recoverable by any claimant who has an ownership or

7  leasehold interest in property; loss of taxes, royalties, rents, or net profit shares

8  caused by the injury, destruction, loss, or impairment of use of real property,

9  personal property, or natural resources; and loss of profits or impairment of earning

10  capacity due to the injury, destruction, or loss of real property, personal property, or

11  natural resources. *See generally* Cal. Gov't Code Section 8670.56.5(h).

12      121.   The contamination illegally caused by the discharge of crude oil into

13  or upon area beaches and the Pacific Ocean injured, and the shutdown of local oil

14  and gas operations, caused to be lost, and/or impaired the use of property or natural

15  resources on which Plaintiffs and the Classes depend for their livelihood, including,

16  but not limited to, local beaches and marine waters; populations of fish, lobster,

17  squid and shellfish; and marine ecosystems. It also caused injury to and destruction

18  of real or personal property, as well as impairment of earning capacity of Plaintiffs

19  and the Classes.

20      122.   Because Plaintiffs rely on natural resources for subsistence use, have

21  ownership or leasehold interests in real or personal property damaged by

22  Defendants' oil spill, derive at least 25 percent of their annual or seasonal earnings

23  from activities that utilize property or natural resources damaged by Defendants' oil

24  spill, and their livelihoods and earning capacity depend directly on the ability to

25  extract the natural resources, Defendants are liable to Plaintiffs and the Classes

26  under the Act.

27

28

123.   The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiffs and the Classes to lose profits, and will cause future losses of profits and/or impair their earning capacities.

124.   The long-lasting effects of contamination related to the discharge of toxic crude oil into the Pacific Ocean and coastal areas, resources which Plaintiffs and the Classes rely on, requires that Plaintiffs and the Classes continue future monitoring and testing activities in order to ensure that such marine life is not contaminated and is safe and fit for human consumption, that the toxic oil from the spill does not further contaminate and degrade Plaintiffs' property, and that their earning capacity is not impaired.

### Second Claim for Relief
### Strict Liability for Ultrahazardous Activities
*(On behalf of all Classes)*

125.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

126.   At all times herein, Amplify Energy Corporation, Beta Operating Company, LLC, and San Pedro Bay Pipeline Company were the owners and operators of the pipeline.

127.   At all times relevant to this action, Defendants had supervision, custody, and control of the pipeline.

128.   At all times herein, Defendants were under a continuing duty to protect Plaintiffs and the Classes from the harm caused by the pipeline.

129.   Defendants were engaged in ultrahazardous activities by transporting flammable, hazardous, and toxic oil through the pipeline.

130.   Plaintiffs and the Classes have suffered harm from the discharge of toxic oil from the pipeline and immediate, direct and negative impact of the shutdown of local oil and gas facilities.

131.   The injuries sustained by Plaintiffs and the Classes as a result of the oil spill were the direct and proximate result of Defendants' activities.

132.   The harm to Plaintiffs and the Classes was and is the kind of harm that would be reasonably anticipated as a result of the risks created by Defendants transporting flammable, hazardous, and toxic oil in a pipeline on which local oil and gas facilities and their workers depend, and not properly maintaining the pipeline in close proximity to the Pacific Ocean.

133.   Defendants' operation of the pipeline and its failure was a substantial factor in causing the harms suffered by Plaintiffs and the Classes.

134.   Plaintiffs and members of the Classes are entitled to recover actual damages.

135.   The acts and omissions of Defendants were conducted with malice, fraud, and/or oppression as set out in this Complaint.

### Third Claim for Relief
### Violation of the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*
#### (*On behalf of all Classes*)

136.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

137.   At, all times herein, Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

138.   The Federal Oil Pollution Act provides that "each responsible party for…a facility from which oil is discharged…into or upon the navigable waters or adjoining shorelines…is liable for the removal costs and damages…that result from such incident." 33 U.S.C. § 2702(a).

139.   Recoverable damages include "injury to, or economic losses resulting from destruction of, real or personal property" and "the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." *Id.* at (b)(2)(B) & (C).

140.   The Act defines "facility" as including a "pipeline" used for transporting oil. 33 U.S.C. § 2701(7).

141.   In the case of a discharge of oil from a pipeline, the "responsible party" is "any person owning or operating the pipeline." *Id.* at (32)(E).

142.   Defendants are the owners and operators of the at-issue pipeline, and is thus the "responsible party."

143.   Defendants' pipeline is a "facility" as it is a pipeline that transports oil.

144.   Plaintiffs and members of the Classes have suffered and will continue to suffer injury, economic losses, loss of profits, and impairment of their earning capacity as a result of the discharge of oil from Defendants' pipeline.

145.   Defendants are responsible for compensating Plaintiffs and members of the Classes for their current and future injuries, remove the oil from the environment, and restore the natural resources harmed and/or destroyed as a result of Defendants' oil spill.

## Fourth Claim for Relief
### Negligence

*(On behalf of all Classes)*

146.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

147.   Defendants owed a duty to Plaintiffs and the Classes to exercise reasonable and ordinary care. That duty arose generally as well as from, among other things, federal, state, and local laws, ordinances and regulations that require Defendants to operate a pipeline in a manner that does not damage public health and safety. These laws include, but are not limited to, the Lempert-Keene Act, Government Code Section 8670, *et seq.*, the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*, the Porter-Cologne Act, Water Code Sections 13000, *et seq.*, Cal. Fish & Game Code Section 5650, *et seq.*, the Federal Clean Water Act, 33 U.S.C. § 1251 *et*

*seq.*, applicable county codes, and state and federal spill response and notification laws.

148.   Defendants also owed the Commercial Fishing Class and the Marine Charter Class a duty of care because Defendants diminished the quantities of available sea life and Defendants could reasonably have foreseen that negligently conducting their drilling and extraction operations, including negligently responding to the spill, may diminish aquatic life and injure these individuals and businesses that depend on the health of the marine environment near the platforms.

149.   Defendants' contractual transactions to safely operate the pipeline system were also intended to directly benefit the Commercial Fishing Class and Marine Charter Class, because the members of these Classes—known to Defendants because they worked in the direct vicinity of the pipeline system— would be able to operate their businesses and make a profit.  It is foreseeable that Defendants' failure to safely operate the pipeline and mitigate the impacts of the spill would harm these Classes. Plaintiffs suffered injury as a result of Defendants' failures to safely operate the pipeline system, because Defendants' actions have fouled the ocean. Additionally, Defendants' failures were closely connected to the harms Plaintiffs have suffered and will continue to suffer, Defendants' gross misconduct causing an oil spill is morally blameworthy, and policy reasons favor imposing a duty on Defendants in order to deter future misconduct by Defendants and other pipeline operators.

150.   Defendants breached their duty to Plaintiffs and the Classes by, among other things, failing to install reasonable safety equipment to prevent a spill, failing to detect and repair corrosion, failing to have adequate safety measures in place to detect the spill expeditiously, and failing to promptly respond to and contain the spill.

151.   Defendants, in the exercise of reasonable care, should have known that the pipeline could rupture or otherwise fail, that its safety measures were

- 40 -

1  insufficient to detect and contain a spill, and that it could spill significant amounts

2  of oil.

3  152.   In addition, Defendants' violations of the above-cited statutes,

4  ordinances, and/or regulations resulted in precisely the harm to Plaintiffs that the

5  laws listed above were designed to prevent, and Plaintiffs and the Classes are

6  members of the class of persons for whose protection those laws were adopted.

7  153.   At all times herein mentioned, Defendants negligently, wantonly,

8  carelessly and/or recklessly maintained and operated the pipeline.

9  154.   As a direct and proximate result of Defendants' negligence, Plaintiffs

10  and the Classes have sustained damages. Those damages may be short-term and

11  long-term. As a direct and legal cause of the Defendants' wrongful acts and

12  omissions herein above set forth, Plaintiffs and the Classes have suffered and will

13  continue to suffer economic harm, injury to earning capacity, loss of use of their

14  real property, the wrongful occupation of their real property, and other losses.

15  155.   The short-term damages include loss of profits due to fishing, harbor,

16  and beach closures caused by the spill, and increased costs associated with traveling

17  to different fisheries and maintaining boats and equipment that cannot be used. The

18  closures have excluded fishers and charter workers and entities from near shore

19  fishing grounds. The short-term damages also include lost profits due to

20  cancellations from customers who, but for Defendants' oil spill, would have used

21  services offered by businesses in Orange County, or simply visited Orange County

22  and the businesses there. The short-term damages additionally include loss of use

23  and enjoyment of beachfront and oceanfront real property because of oil polluting

24  the beaches and waters, as well as potential lost rental income and profits from

25  vacationers and tourists visiting Orange County.

26  156.   The long-term damages include future lost profits due to the harm

27  caused to the fisheries themselves. For example, the oil is likely to depress (or even

28  eradicate in some areas) populations of crab, lobster, and other crustaceans by

- 41 -

directly killing numbers of those species or hindering their breeding and feeding. Similarly, oil that sinks below the surface will poison fish and potentially smother their eggs, limiting their future numbers. The oil spill has and will continue to drive down the price of local fish and shellfish, as consumers and fish processors become wary of producing locally caught species. Defendants' oil spill caused physical injury to property in which Plaintiffs have a direct ownership interest or an interest by virtue of their right to harvest fish and shellfish.

157.   The oil spill's long term damages may also diminish the values of oceanfront and beachfront real properties along the coast that have been polluted by Defendants' oil.

158.   Similarly, the image of the Southern California Coast as a pristine place and as a perfect place to vacation has been tarnished. Images of oil-soaked wildlife and fouled beaches will dissuade people from visiting the region and the many businesses that depend on tourism and other visitors.

159.   The acts and omissions of Defendants, and each of them, were conducted with malice, fraud, and/or oppression as described in this Complaint.

**Fifth Claim for Relief**
**Public Nuisance**
*(On behalf of all Classes)*

160.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

161.   Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property by discharging as much as 131,000 gallons of crude oil into the Pacific Ocean and onto the California coastline.

162.   That nuisance affects a substantial number of individuals similarly situated to the Plaintiffs, such as citizens of and visitors to Orange County, real

1   property owners, and businesses that rely on the safe and healthy environment in

2   the County.

3       163.   Defendants' oil spill is a condition that would reasonably annoy and

4   disturb an ordinary person, as shown by, for example, the health impacts warned of

5   by the county, the community outrage in response to the spill, and the nationwide

6   interest in the spill's impacts on the Southern California Coast.

7       164.   The seriousness and gravity of that harm outweighs the social utility of

8   Defendants' conduct. There is little or no social utility associated with releasing

9   tens of thousands of gallons of oil into the unique ecological setting of Orange

10  County.

11      165.   Plaintiffs and the Classes suffered harm and injury to their economic

12  livelihood, which they did not consent to and which is different from the type of

13  harm suffered by the general public.

14      166.   The above acts and omissions also created a public nuisance *vis-à-vis*

15  Plaintiffs and the Classes, interfering with the property rights of Plaintiffs and the

16  Classes and rights incidental to those property rights.

17      167.   The acts and omissions of Defendants described herein were also in

18  violation of various California state laws including but not limited to the Lempert-

19  Keene Act, Government Code Section 8670, *et seq.*, the Oil Pollution Act, 33

20  U.S.C. § 2701, *et seq.*, the Porter-Cologne Act, Water Code Sections 13000, *et seq.*,

21  and Cal. Fish & Game Code Section 5650, *et seq*.

22      168.   Defendants' violations of those statutes directly and proximately

23  caused, and will cause, injury to the Plaintiffs and the Classes of a type which the

24  statutes are intended to prevent. Plaintiffs and the Classes are of the class of persons

25  for whose protection these statutes were enacted.

26      169.   As a direct and legal cause of Defendants' wrongful acts and/or

27  omissions herein above set forth, Plaintiffs and the Classes have suffered and will

28  suffer economic harm, injury, and losses.

170.   To remedy the harm caused by Defendants' nuisance, Plaintiffs will seek public injunctive relief, including, but not limited to, an order requiring Defendants to do the following: restore fisheries impacted by the spill; repair reputational damage done to Orange County's seafood industry; restore the area's real properties and beaches impacted by the spill; repair short and long term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

171.   In maintaining the nuisance, which is ongoing, Defendants are acting with full knowledge of the consequences and damage being caused, and the acts and omissions of Defendants were done with malice, fraud, and/or oppression as described in this Complaint.

### Sixth Claim for Relief
### Negligent Interference With Prospective Economic Advantage

(*On behalf of Commercial Fisher*
*and Marine Charter Classes*)

172.   Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

173.   Plaintiffs and the Classes have existing or prospective economic relationships with citizens of Orange County, visitors to Orange County, and other individuals and organizations doing business in and related to Orange County.

174.   These relationships have a reasonably probable likelihood of resulting in future economic benefits or advantages to Plaintiffs and the Classes.

175.   Defendants knew or should have known of these existing and prospective economic relationships.

176.   Defendants owed a duty to Plaintiffs and the Classes to avoid negligent or reckless conduct that would interfere with and adversely affect the existing and prospective economic relationships of Plaintiffs and the Classes.

- 44 -

177.   Defendants breached that duty to Plaintiffs and the Classes by, among other things, failing to install and/or maintain reasonable safety equipment to prevent such an oil spill, failing properly to maintain the pipeline in a safe condition, and failing to promptly respond to and contain the spill.

178.   Defendants knew or should have known that, if they failed to act with reasonable care, the existing and prospective economic relationships of Plaintiffs and the Classes would be interfered with and disrupted.

179.   Defendants were negligent and failed to act with reasonable care as set forth above.

180.   Defendants engaged in wrongful acts and/or omissions as set forth above, including but not limited to their violations of federal, state, and local laws that require Defendants to operate their pipeline in a manner that does not damage public health and safety.

181.   As a direct and proximate result of Defendants wrongful acts and/or omissions, Defendants negligently and recklessly interfered with and disrupted the existing and prospective economic relationships of Plaintiffs and the Classes.

182.   As a direct and proximate result of Defendants' wrongful acts and/or omissions, Plaintiffs and the Classes have suffered and will suffer economic harm, injury, and losses as set forth above.

**Seventh Claim for Relief**
**Trespass**

*(On behalf of Real Property Cdlass)*

183.   Plaintiffs who have a real property interest in waterfront property bring this on behalf of themselves and all other similarly situated land owners or lessees. They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

184.   Defendants discharged a polluting matter beyond the boundary of Plaintiffs' and Class Members' real property in such a manner that it was

reasonably foreseeable that the pollutant would, in due course, invade Plaintiffs' and Class Members' real property and cause harm.

185.   By discharging polluting matter, Defendants entered, invaded, and intruded on the real properties of Plaintiffs and the Class Members without privilege, permission, invitation, or justification.

186.   Defendants had a duty to use reasonable care not to enter, intrude on, or invade Plaintiffs' and Class Members' real properties. Defendants also owed a duty to Plaintiffs and members of the Class to exercise reasonable care in the manufacture, maintenance, and operation of the pipeline.

187.   Defendants had a heightened duty of care to Plaintiffs and the Class because of the great danger associated with transporting oil so near to pristine coastal residential areas and nearby real properties along the Southern California Coast.

188.   Defendants breached the duty they owed to Plaintiffs and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance, and operation of the pipeline, which conduct resulted in entry, intrusion, or invasion on Plaintiffs' and Class Members' real properties.

189.   Defendants knew or should have known that their conduct would foreseeably result in a disastrous oil spill, causing damage to the real properties and economic interests of persons in the area affected by the spill.

190.   As a direct and proximate result of Defendants' trespass, Plaintiffs and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, loss of income and other economic loss.

191.   Defendants' wanton or reckless conduct, as described herein, entitles Plaintiffs and Class Members to punitive damages.

**Eighth Claim for Relief**
**Continuing Private Nuisance**

(*On behalf of Real Property Class*)

192.   Plaintiffs who have a real property interest in waterfront property bring this claim on behalf of themselves and all other similarly situated land owners or lessees. They incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

193.   Defendants' actions and inactions caused, maintained, and/or permitted the contamination alleged in this action by their negligence, intentional or otherwise, actionable acts, and/or omissions.

194.   Defendants created the contamination at issue, which is harmful to both human health and the environment and interferes with Plaintiffs' comfortable use and enjoyment of the real property in which they have a possessory interest.

195.   Defendants were, at all relevant times, in sufficient control of their pipeline to have known of the threatened release of oil and associated hydrocarbons and to have prevented the resulting contamination. Defendants knew or should have known that their operation of the failed pipeline would have, and did, cause the contamination described herein.

196.   Despite knowledge and forewarning, Defendants failed to take reasonable steps to prevent the failure that resulted in the contamination at issue.

197.   Defendants failed to take reasonable steps to abate the contamination at issue, which continues to spread to previously uncontaminated areas. The contamination is, however, abatable, and, therefore, it is continuing in nature. This also confirms that Defendants have knowingly maintained the nuisance, i.e. the contamination at issue.

198.   Plaintiffs did not consent to the ongoing damage to the use and enjoyment of their property as a result of Defendants' actions and inactions.

199.   After having a reasonable opportunity to do so, Defendants failed to take reasonable measures to properly abate the contamination described herein.

200.   As a direct and proximate cause, Defendants' acts and omissions have caused substantial actual damage and immediate and ongoing diminution of the value of Plaintiffs' real property and the property of the Classes.

201.   As a result, Plaintiffs have and will continue to suffer damages, both economic and otherwise.

202.   The contamination described herein constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

203.   Plaintiffs are informed and believe, and on that basis allege, that the contamination is continuing and abatable.

204.   As a proximate result of the nuisance, Plaintiffs have and will continue to suffer damages.

## IX.   <u>REQUEST FOR RELIEF</u>

Plaintiffs, individually and on behalf of all others similarly situated, request judgment against Defendants as follows:

A.      For an order certifying the Classes and appointing Plaintiffs as representatives of the Classes and appointing the lawyers and law firms representing Plaintiffs as counsel for the Classes;

C.      For all recoverable compensatory, statutory, and other damages. Including remediation costs, sustained by Plaintiffs and the Classes, including all relief allowed under applicable laws;

D.      For costs;

E.      For both pre-judgment and post-judgment interest on any amounts awarded;

F.      For treble damages insofar as they are allowed by applicable laws;

G.      For appropriate individual relief as requested above;

H.      For payment of attorneys' fees and expert fees as may be allowable

1    under applicable law, including Cal. Gov. Code section 8670.56.5(f) the Private

2    Attorneys General Act ("PAGA"), Cal. Lab. Code. § 2698, et seq.;

3        I.    For exemplary or punitive damages under Cal. Civ. Code Section 3294

4    for the oppression, fraud, and malice alleged above; and

5        J.    For such other and further relief, including declaratory relief, as the

6    Court may deem just and proper.

7                    **X.    <u>DEMAND FOR JURY TRIAL</u>**

8        Plaintiffs hereby demand a trial by jury on all issues so triable.

9    Dated:  October 11, 2021        Respectfully submitted,

10                                LIEFF CABRASER HEIMANN
11                                 & BERNSTEIN LLP

12                                By: ___*/s/Lexi J. Hazam*_____

13                                Elizabeth J. Cabraser (CSB No. 083151)
                                 Robert J. Nelson (CSB No. 132797)
14                                Lexi J. Hazam (CSB No. 224457)
                                 Wilson M. Dunlavey (CSB No. 307719)
15                                **LIEFF CABRASER HEIMANN**
16                                 **& BERNSTEIN, LLP**
                                 275 Battery Street, 29th Floor
17                                San Francisco, CA 94111-3339
                                 Telephone: (415) 956-1000
18                                Facsimile: (415) 956-1008

19
                                 Kelly K. McNabb (*pro hac vice forthcoming*)
20                                **LIEFF CABRASER HEIMANN**
                                 **& BERNSTEIN, LLP**
21                                250 Hudson Street, 8th Floor
                                 New York, NY 10013-1413
22                                Telephone: (212) 355-9500
                                 Facsimile: (212) 355-9592
23
                                 Alexander Robertson, IV (CSB No. 127042)
24                                **ROBERTSON & ASSOCIATES, LLP**
                                 32121 Lindero Canyon Rd. Suite 200
25                                Westlake Village, CA 91361
                                 Telephone: (818) 851-3850
26                                Facsimile: (818) 851-3851

27

28